**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION**

| | |
|---|---|
| **LATISHA ENNIS**, <br><br> Plaintiff, <br><br> v. <br><br> **EQUIFAX INFORMATION SERVICES, LLC and TRANS UNION, LLC.**, <br><br> Defendants. | Civil Action No. 7:20-CV-143 (HL) |

**ORDER**

Plaintiff Latisha Ennis, a consumer, filed this lawsuit seeking redress of alleged violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, et seq. Plaintiff alleges that Defendants failed to properly investigate tradelines[1] on her credit report that were marked as disputed. She informed Defendants that she no longer disputed the accounts and Defendants informed the furnishers of the accounts that she no longer disputed them. However, the furnishers told Defendants that the information was incorrect and the accounts were still in dispute. Accordingly, Defendants did not change notation on the disputed

---

[1] "A tradeline is a term used by credit reporting agencies to describe credit accounts listed on your credit report. For each account you have, there is a separate tradeline, which includes information about the creditor and the debt." Ben Luthi, *What are Tradelines and How do They Affect You?*, EXPERIAN (May 1, 2019) https://www.experian.com/blogs/ask-experian/what-are-tradelines/.

tradelines.  Now before the Court is Defendants' Equifax Information Services, LLC ("Equifax") and Trans Union, LLC ("Trans Union") Motion for Judgment on the Pleadings (Doc. 36). Upon review of the pleadings, the Court **GRANTS** Defendants' motion.

I.   **FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff alleges that Defendants failed to properly investigate inaccurate tradelines made by Nationwide Recovery Services, Inc. ("Nationwide") and Medical Data Systems, Inc. ("MDS").[2] (Doc. 1, ¶ 12-17). According to Plaintiff, her Trans Union and Equifax credit reports inaccurately reflected that these were "accounts in dispute." (*Id.* at ¶ 8,9). On April 9, 2020, Plaintiff obtained her credit disclosures and noticed two tradelines marked as in dispute. (*Id.* at ¶ 11).[3] On or about April 30, 2020, Plaintiff submitted a letter to Equifax and Trans Union requesting that the credit bureaus remove the notation of "account in dispute." (*Id.* at ¶ 12). Equifax and Trans Union forwarded Plaintiff's consumer dispute to Nationwide and MDS (the "furnishers"). (*Id.* at ¶ 13). The furnishers verified to Equifax and Trans Union that its reporting of the relevant tradelines was accurate. (*Id.* at ¶ 15). On June 15, 2020, Plaintiff obtained her Equifax and Trans Union credit disclosures, which still had the "accounts in dispute" notation on both accounts. (*Id.* at ¶ 16).

---

[2] Plaintiff named Nationwide and MDS as defendants in her Complaint. She later dismissed her claims against these entities. (Docs. 15, 34).
[3] Plaintiff no longer disputes the Errant Tradelines. (Doc. 1, ¶ 10).

As a result of Defendants' alleged negligent failure to maintain and/or follow proper procedures to assure maximum possible accuracy of the information it reported to one or more third parties, Plaintiff claims that she has suffered both emotional damage and damage to her credit. (*Id.* at ¶ 47, 54). She further states that Defendants failed to conduct a reasonable investigation of her claim as required by 15 U.S.C. § 1681(i). (*Id.* at ¶ 46, 53). This has caused actual damages, mental anguish and suffering, humiliation, and embarrassment. (*Id.* at ¶ 47, 54).

Plaintiff filed her complaint with this Court on July 27, 2020. The CRA Defendants filed a Joint Motion for Judgment on the Pleadings on March 19, 2021.

## II.    MOTION FOR JUDGMENT ON THE PLEADINGS STANDARD

A Rule 12(c) motion for judgment on the pleadings is treated the same as a Rule 12(b)(6) motion to dismiss for failure to state a claim. *Strategic Income Fund, L.L.C. v. Spear, Leads & Kellogg Corp.*, 305 F.3d 1293, 1295 (11th Cir. 2002) ("Whether the Court examined…[the count] under Rule 12(b)(6) or 12(c), the question was the same: whether the count stated a claim for relief."). Federal Rule of Civil Procedure 12(b)(6) requires dismissal of a complaint when a plaintiff's allegations fail to set forth facts which, if true, would entitle the complainant to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," and "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 678-79. To be plausible, the complaint must

contain "well-pleaded facts" that "permit the court to infer more than the mere possibility of misconduct." *Id.*

To survive a motion to dismiss, a complaint "does not need detailed factual allegations," but it must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678. Furthermore, "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555 (internal citations omitted); *see also Redland Co. v. Bank of Am. Corp.*, 568 F.3d 1232, 1234 (11th Cir. 2009) (explaining that "[t]o survive dismissal, the complaint's allegations must plausibly suggest that the plaintiff has a right to relief, raising the possibility above a speculative level; if they do not, the plaintiff's complaint should be dismissed" (internal quotation omitted)).

### III. DISCUSSION

The purpose of the FCRA is to "require that consumer reporting agencies ["CRAs"] adopt reasonable procedures for meeting the needs of commerce for consumer credit…in a manner which is fair and equitable to the consumer with regards to confidentiality, accuracy, relevancy, and proper utilization." 15 U.S.C. § 1681(b). "The FCRA creates a private right of action against consumer reporting agencies for the negligent, *see* 15 U.S.C. § 1681o, or willfull, *see* 15 U.S.C.

4

§ 1681n, violation of any duty imposed under the statute." *Collins v. Experian Info. Solutions, Inc.*, 775 F.3d 1330, 1333 (11th Cir. 2015) (citing *SafeCo Ins. Co. of Am. v. Burr*, 551 U.S. 47, 53 (2007)). In Counts III and IV of her complaint, Plaintiff alleges that Equifax and Trans Union "negligently failed to maintain and/or follow reasonable procedures to assure maximum possible accuracy of the information it reported to one or more third parties pertaining to Plaintiff," in violation of 15 U.S.C. § 1681e(b), and negligently failed to conduct a reasonable reinvestigation "[a]fter receiving Plaintiff's consumer dispute to the Errant Tradelines," in violation of 15 U.S.C. § 1681i. (Doc. 1, at ¶¶ 45, 46, 52, 53).

"The FCRA imposes certain obligations on CRAs" such as Equifax and Trans Union, "two of which are at issue in this case." *Ellis v. Equifax Info. Servs.*, No. 1:18-cv-5185-TCB-CMS, 2019 U.S. Dist. LEXIS 184904, at *4 (N.D. Ga. June 6, 2019), *adopted by* 2019 U.S. Dist. LEXIS 184905 (N.D. Ga. June 24, 2019). "First, whenever a CRA prepares a consumer report, it must 'follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates.'" *Id.* at *4-5 (quoting 15 U.S.C. § 1681e(b)). "And second, whenever the completeness or accuracy of any item in a consumer's credit file is disputed, the CRA must, among other things, 'conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate….'" *Id.* at *5 (quoting 15 U.S.C. § 1681li)). To state a claim under § 1681e(b), a plaintiff must allege that: "(1) the CRA prepared a report; (2) the report contained inaccurate information; (3) the inaccuracy resulted from the

5

CRA's failure to follow reasonable procedures; and (4) the inaccurate report caused the harm." *Dykes v. Westlake Portfolio Mgmt.*, No. 1:19-cv-05689-CAP-RGV, 2020 U.S. Dist. LEXIS 255423, at *15 (N.D. Ga. May 8, 2020 (internal quotation omitted). "To state a claim under § 1681i(a), a plaintiff must allege: (1) the [consumer report in dispute] contains inaccurate or incomplete information; (2) the [plaintiff] notified the [CRA] of the alleged inaccuracy; (3) the dispute is not frivolous or irrelevant; (4) the [CRA] failed to respond or conduct a reasonable reinvestigation of the disputed items; [and] (5) the failure to reinvestigate caused the [plaintiff] to suffer out-of-pocket losses or intangible damages such as humiliation or mental distress." *Id.* at *16–17 (internal quotation omitted).

Defendants argue that Plaintiff's FCRA claims fail against them because: (1) Plaintiff did not notify the furnishers directly that she no longer disputes the accounts; (2) the FCRA does not require CRAs to reinvestigate dispute notations; and (3) Plaintiff cannot establish a willful violation of the FCRA. (Doc. 36-1). The undersigned agrees with Defendants that Plaintiff's FCRA claims fail against them because Plaintiff has not alleged that she notified the furnishers that she no longer disputed the accounts in question or that she requested that the furnishers remove the accounts in dispute notations on her consumer reports.

The FCRA provides that "[i]f the completeness or accuracy of any information furnished by any person to any consumer reporting agency is disputed to such person by a consumer, the person may not furnish the information to any consumer reporting agency *without notice that such information is disputed by the*

6

*consumer.*" 15 U.S.C. § 1681s-2(a)(3) (emphasis added). "If a consumer reporting agency is notified pursuant to [15 U.S.C. § 1681s-2(a)(3)] that information regarding a consumer [which] was furnished to the agency is disputed by the consumer, the agency shall indicate that fact in each consumer report that includes the disputed information." 15 U.S.C. § 1681c(f). Although Plaintiff omits from her Complaint any details about how and when she disputed the account information, she alleges that she "no longer disputes the Errant Tradelines" (Doc. 1, at ¶ 10), thus indicating that she did dispute that information at some point and, therefore, that dispute was reported to the CRAs and included in her consumer reports as required by 15 U.S.C. §§ 1681s-2(a)(3) and 1681c(f).

Plaintiff further alleges that on April 30, 2020, she "submitted letters to Equifax and Trans Union requesting that the credit bureaus remove the notation of 'account in dispute'" and that "Equifax and Trans Union forwarded Plaintiff's disputes to the Furnishers," who "received Plaintiff's consumer disputes from Equifax and Trans Union." (Doc. 1 at ¶ 12, 13). She does not allege that she informed the furnishers that she no longer disputed the account information in question or that she requested that the furnishers notify the CRAs that she no longer disputed the accounts. Thus, it is not surprising that when Equifax and Trans Union forwarded Plaintiff's disputes to the furnishers (as Plaintiff alleges) each furnisher verified to Equifax and Trans Union that its reporting of its Errant Tradelines was accurate. (*Id.* ¶ 15). Therefore, pursuant to a CRA's obligations under 15 U.S.C. § 1681c(f)—which provides that "[i]f a consumer reporting agency

7

...

is notified pursuant to [15 U.S.C. § 1681s-2(a)(3)] that information regarding a consumer [which] was furnished to the agency is disputed by the consumer, the agency *shall* indicate that fact in each consumer report that includes the disputed information" (emphasis added)—Equifax and Trans Union maintained the "account in dispute" notation on Plaintiff's consumer reports.

Plaintiff argues that her claims are viable even though she did not notify the furnishers directly that she no longer disputed the account information because Equifax and Trans Union violated §§ 1681i and 1681e(b) "[b]y failing to properly investigate Plaintiff's dispute and remove the inaccurate dispute statuses" based on her alleged letter to them stating she no longer disputed the tradelines and requesting that the notations be removed.

Plaintiff cites *Wheeler v. Trans Union, LLC*, No. CV-03328-PHX-JAT, 2018 U.S. Dist. LEXIS 89681 (D. Ariz. May 30, 2018) in support of her contentions that she has sufficiently stated a claim for relief. (Doc. 39 at 2). In that case, the court denied Trans Union's motion to dismiss claims similar to those made in this case. *Wheeler* has no precedential value in this Court and provides no persuasive analysis of the issue of Plaintiff's failure to notify the furnishers that she no longer disputed their tradelines or request that they remove the "account in dispute" notations. Courts in the Northern District of Georgia, on the other hand, have dismissed claims virtually identical to the one filed in this case, noting that the allegations are "sparse and vague" and "conclusory" and fail to state a FCRA claim where the plaintiff did not notify the furnishers that he or she no longer disputed

the account, even where the plaintiff provided such notification to the CRAs. *See, e.g. Hardnett v. Equifax Info. Servs.*, No. 1:20-cv-03017-LMM-RDC, 2021 U.S. Dist. LEXIS 96431 (N.D. Ga. Apr. 26, 2021).[4]

Plaintiff argues that Equifax and Trans Union should have initiated a reinvestigation and removed the notation from her statement upon receipt of her letter stating that she no longer disputes the accounts. (Doc. 39 at p. 18-19). But Plaintiff has not alleged facts that plausibly demonstrate what additional reasonable reinvestigation Equifax and Trans Union could have or should have done to determine that the "account in dispute" notations were inaccurate in the face of the furnishers' reports that the accounts remained in dispute and the absence of any allegation that Plaintiff notified the furnishers that she no longer disputed the accounts. Plaintiff has provided no persuasive authority to support

---

[4] *See also* Case Nos. 1:20-cv-02239-WMR, *Briscoe v. Equifax Info. Servs., LLC et al.*; 1:20-cv-1870-LMM-AJC, *White v. Equifax Info. Servs., LLC et al.*; 1:20-cv-1871-TCB-WEJ, *Foreman v. Equifax Info. Solutions, LLC, et al.*; 1:20-cv-2852-SDG-CMS, *Fisher v. Equifax Info. Servs., LLC, et al.*; 1:20-cv-3604- CAP-CMS, *Sidney v. Equifax Info. Servs., LLC, et al.*; 1:20-cv-2316-TWT-CCB, *Griffin v. Equifax Info. Servs., LLC, et al.*; 1:20-cv-2844-MHC-AJB, *Coleman v. Equifax Info. Servs., LLC, et al.*; 1:20-cv-3494-WMR-AJB, *Redel v. Equifax Info. Servs., LLC*; 1:20-cv-02319-WMR-RDC, *Campbell v. Equifax Info. Servs., LLC, et al.*; 1:20-cv-00076-LAG, *Green v. Equifax Info. Solutions, LLC, et al.*; 1:20-cv-02855-SCJ-CCB, *Outlaw v. Equifax Info. Servs., LLC, et al.*; 5:20-cv-00272-MTT, *Fatah v. Equifax Info. Servs., LLC, et al.*; 1:20-cv-03011-SDG-JCF, *Flournoy v. Equifax Info. Servs., LLC, et al.*; 7:20-cv-00143-HL, *Ennis v. Equifax Info. Servs., LLC, et al.*; 1:20-cv-03493-MLB-LTW, *Oglesby v. Equifax Info. Servs., LLC, et al.*; 1:20-cv-04382-ATCMS, *Anthony v. Equifax Info. Servs., LLC, et al.*; 1:20-cv-04372-JPB-JCF, *Jonathan Jones v. Equifax Info. Servs., LLC, et al.*; 2:20-cv-00253-RWS-JCF, *Carol Jones v. Equifax Info. Servs., LLC, et al.*; 1:20-cv-04383-ELR-CCB, *Horn v. Equifax Info. Servs., LLC, et al.*; and 3:20-cv-00199-TCB-RGV, *Jordan v. Equifax Info. Servs., LLC, et al*.

her contention that Equifax and Trans Union violated the FCRA by maintaining the "account in dispute" notations after she allegedly sent a letter to them "stating that she no longer disputes the Errant Tradelines and requesting that the inaccurate dispute notations be removed" where Equifax and Trans Union "forwarded Plaintiff's dispute to the Furnishers." (Doc. 1 at ¶ 12, 13). Plaintiff did not notify the furnishers that the accounts were no longer in dispute and that she wanted them to remove the "account in dispute" notations, and the furnishers "verified to Equifax and Trans Union that its reporting of its Errant Tradelines was accurate." (*Id.* at ¶ 15).

As the court recently explained in *Hardnett* in addressing similar claims against a furnisher:

> Plaintiff's error was telling Equifax and Trans Union, rather than [the furnisher] that she no longer disputed her tradeline. Plaintiff's tradeline belonged to Defendant [furnisher]. Plaintiff's dispute regarding that tradeline existed between herself and Defendant [furnisher] only. Defendant, a furnisher, reported the existence of that dispute to CRAs as required by 15 U.S.C. § 1681s-2(a)(3). Plaintiff simply needed to inform Defendant—not Equifax and Trans Union, *which are merely* CRAs—that she no longer disputed her tradeline.

2021 U.S. Dist. LEXIS 96431, at *6. The court further explained, "'[I]f a consumer does not directly tell the furnisher that it no longer disputes the debt, the FCRA requires the furnisher to retain that dispute status pursuant to 15 U.S.C. § 1681s-2(a)(3)'" *Id.* (quoting *McGee,* 2019 U.S. Dist. LEXIS 111356, at *7-8). The fact that the plaintiff in *Hardnett*—as in this case—did not tell the furnisher that she no longer disputed her tradeline but only notified Equifax and Trans Union, was fatal

10

to her claims. *Id.* at *6-7. Similarly here, Plaintiff did not tell the furnishers that she did not dispute the tradelines or debts, so they were required to maintain that dispute status pursuant to 15 U.S.C. § 1681s-2(a)(3), regardless of Plaintiff's alleged letter to Equifax and Trans Union. *See, e.g.*, *Hardnett*, 2021 U.S. Dist. LEXIS 964931, at *6; *McGee*, 2019 U.S. Dist. LEXIS 111356, at *7-8.

Although the claims at issue in the above-cited cases involved furnishers, the fact that the furnishers were required to maintain the dispute status in the absence of notification from Plaintiff that she no longer disputed the accounts yields the same result as to Plaintiff's claims against the CRAs. Because Plaintiff did not inform the furnishers the accounts were no longer in dispute, the furnishers were required to report the accounts as being in dispute to Equifax and Trans Union—even after Plaintiff allegedly sent the CRAs a letter stating that she no longer disputes the tradelines and requesting that the inaccurate dispute notations be removed—and Equifax and Trans Union were then required to report that dispute status pursuant to 15 U.S.C. § 1681(c)f ("If a consumer reporting agency is notified pursuant to [15 U.S.C. § 1681s-2(a)(3)] that information regarding a consumer [which] was furnished to the agency is disputed by the consumer, the agency *shall* indicate that fact in each consumer report that includes the disputed information." (emphasis added)).

Plaintiff has not alleged that she notified the furnishers that the accounts were in dispute or that the furnishers did not notify the CRAs of the disputes. She simply vaguely alleges that she "no longer disputes the Errant Tradelines." (Doc.

11

1 at ¶ 10). This could imply that she previously disputed them. The court in *Briscoe* noted that the plaintiff's complaint "omits any allegation whatsoever indicating to whom Plaintiff initially disputed the subject account. Plaintiff neither alleges that she disputed her debt directly to Rent Recovery [the furnisher] or to Equifax." 2020 U.S. Dist. LEXIS 250943, at *17-18. The court referred to those omissions as "a thinly veiled attempt to avoid the result in *McGee*," i.e., dismissal. *Id.* at *17. The court in *Briscoe* found that the omitted information did not alter the analysis or result. *Id.* at *18-23.

The Court similarly finds that Plaintiff's omissions as to how, when, and to whom she originally disputed the accounts at issue are insufficient to survive dismissal. Plaintiff alleges that she had at some point disputed the accounts; she sent a letter to Equifax and Trans Union (but not the furnishers) "stating that she no longer disputes the Errant Tradelines and requesting that the inaccurate dispute notations be removed"; Equifax and Trans Union sent "Plaintiff's dispute" to the furnishers; the furnishers "verified to Equifax and Trans Union that its reporting of its Errant Tradelines was accurate"; and Equifax and Trans Union continued to include the dispute notations in their reports. (Doc. 1 ¶¶ 10, 12, 13, 15). As discussed above, the furnishers and the CRAs were required to report those accounts in dispute in the absence of any allegation that Plaintiff informed the furnishers that she no longer disputed them.

Plaintiff also asserts that the CRAs reasonable investigation of her dispute should have gone no further than "her own statement" that "she no longer disputed

12

the tradelines and wanted the inaccurate dispute statuses removed." (Doc. 39 at p. 19). That is not how the FCRA works. The CRAs were required by law to provide notification of the dispute to the furnishers. 15 U.S.C. § 1681i(b)(2)(A). Indeed, Plaintiff was "fully expecting Equifax and Trans Union to forward her disputes to the furnishers, as Equifax and Trans Union were required to do pursuant to 15 U.S.C. § 1681i(a)(2)." (Doc. 39 at p. 14). The furnishers responded by telling the CRAs that their reporting was accurate. (Doc. 1 at ¶ 15). Thus, accepting Plaintiff's allegations as true, a new dispute existed regarding whether the reporting of the account was accurate, *i.e.* the accounts were "in dispute."

That dispute—the dispute about a dispute—was between Plaintiff and the furnishers. To resolve it, Plaintiff needed to work directly with MDS and Nationwide. *McGee*, 2019 U.S. Dist. LEXIS 111356, at *7-8. If Plaintiff directly told the furnishers that she no longer disputed the accuracy of the tradeline, and the furnishers continued to report the tradeline as "in dispute," *then* Plaintiff could dispute the tradeline with a CRA. The CRA would contact the furnisher about the inaccuracy, and if the furnisher continued to maintain Plaintiff disputed the tradeline after being told directly that she did not, Plaintiff would have a private right of action under 15 U.S.C. § 1681s-2(b). What Plaintiff cannot do is "unilaterally chang[e] her mind" about the earlier dispute and ["fail to inform the furnisher that she wishe[d] to withdraw her earlier dispute." *See Briscoe*, 2020 WL 10046994, at *8. That was bound to result in the account being reported as "in dispute" and does not give rise to an FCRA violation. *See Alexis White v. Trans*

13

*Union, LLC, et al*, No. 1:20-CV-04360-MHC-LTW, (ECF. No. 48-1) (Final Report and Recommendation Granting Trans Union LLC's Motion to Dismiss) (N.D. Ga. Sept. 28, 2021).

Finally, Plaintiff alleges that Defendants willfully violated the FCRA by failing to remove the notation of account in dispute on Plaintiff's Nationwide and Medical Data accounts. A CRA "willfully" violates the FCRA only when its "reading of the statute…[is] objectively unreasonable." *Safeco. Ins. Co. of America v. Burr*, 551 U.S. 47, 58-59 (2007). To establish that a CRA willfully failed to comply with the FCRA, a plaintiff must "establish that [defendant] either knowingly or recklessly violated that section." *Pedro v. Equifax, Inc.*, 868 F.3d 1275, 1280 (11th Cir. 2017). "An agency recklessly violates the Act if it takes an action that 'is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless.'" *Id.* (*quoting Safeco*, 551 U.S. at 69). "A [CRA] that adopts an objectively reasonable reading of the Act does not knowingly violate the Act." *Id.*

In the present case, Trans Union and Equifax adopted an interpretation of the Act that was objectively reasonable. At a minimum, the CRA Defendants' interpretation of the statute has a foundation in the statutory text. The only further step Plaintiff alleges should have been done is simply that they should have taken her word for it based on her "statement that she no longer disputed the tradelines and wanted the inaccurate dispute statuses removed." (Doc. 39 at p. 19). Based

14

on her own admissions, the CRAs did contact the furnishers to verify the information as presented to them by forwarding her letter. The furnishers identified the accounts as still in dispute. Plaintiff does not identify any further steps that the CRAs should have taken to investigate this issue. This action was not unreasonable, nor was there a clear further step that could have been taken to render these actions unreasonable.

Plaintiff also fails to cite any authority that "might have warned [the CRAs] away from the view [they] took." *Pedro*, 868 F.3d at 1281. There are no relevant judicial decisions or administrative guidance, merely the contention that "[n]othing else in the world" could have assisted the CRAs with the investigation beyond the Plaintiff's statement that she did not dispute the accounts. (Doc. 39 at p. 19).

"District courts may, and often do, determine on the pleadings that a plaintiff failed to plead willfulness when the interpretation of the relevant statute by the consumer reporting agency was not objectively unreasonable." *Pedro*, 868 F.3d at 1282 (citing *King v. Movietickets.com, Inc.*, 555 F.Supp.2d 1339, 1342–43 (S.D. Fla. 2008). Because Defendants adopted an interpretation of the Act that was not objectively unreasonable, this Court finds Defendants did not willfully violate the provisions set forth by the FCRA.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants Equifax and Trans Union Joint Motion for Judgment on the Pleadings (Doc. 36). This case is hereby dismissed with prejudice.

**SO ORDERED** this 22nd Day of October, 2021.

***s/ Hugh Lawson***
**HUGH LAWSON, SENIOR JUDGE**

erj